Brackett *v.* Ridlon.

*Exceptions sustained.* — *New trial granted.*

APPLETON, C. J. CUTTING, KENT, DANFORTH and TAP-LEY, JJ., concurred.

*E. B. Smith*, for the plaintiff.

*Drew & Hamilton*, for the defendant.

---

NATHANIEL BRACKETT *versus* JOSEPH RIDLON.

If an attempted attachment of real estate be void, but the succeeding levy valid, the creditor's title will, in the absence of intervening claims, take date from the time of the levy; and the officer's reference to the attachment, in his return upon the execution, will not affect the validity of the levy.

The title of a tenant in a real action cannot be affected by "actual notice" of a prior unregistered deed, on the part of any of his predecessors in title, if the former be an innocent purchaser for value, without actual notice of said deed.

When the term "fee simple" is used in the appraisers' certificate as descriptive of the nature of the debtor's estate appraised by them, it means that the estate was owned by the debtor "in severalty," and that it was an estate "in possession;" and is a sufficient compliance in this particular with R. S., c. 76, § 3.

In the absence of satisfactory proof to the contrary, the Court sitting *in banc* will presume that the officer and appraisers making a levy made their return upon the "back of the execution." The mere fact that copies produced are not thus made, is not satisfactory, especially when they speak of the "within named creditor" and of "this execution."

Brackett *v.* Ridlon.

ON EXCEPTIONS.

WRIT OF ENTRY to recover certain premises, the title to which was admitted to have formerly been in one James W. Weeks. The plaintiff claimed title through a deed of warranty from said Weeks to I. & N. Brackett, dated March 24, 1851, but not recorded until September 29, 1865; and several other mesne conveyances, all of which latter named were duly recorded prior to the attachment hereinafter to be named.

The defendant derived his title as follows: — The Weeks deed not having been recorded, one Moore, on Dec. 21, 1858, caused a general attachment of said Weeks' real estate in the county to be made, on a writ dated Dec. 18, 1858, and returnable at the Sept. term, 1859, in York county. Judgment was duly rendered in that action, and the execution issuing thereon was extended upon the premises in controversy, Nov. 8, 1859, and seizin delivered to Moore by the officer.

Prior to the levy, the premises had been in possession of the demandant; from and after the levy, Moore and those deriving title from him have been in possession.

The essential part of the appraisers' certificate was, that they proceeded with the officer (named) to view and examine, so far as was necessary to a just estimate of its value, the "following lands and tenements, to wit: — a parcel of land lying," &c., "and bounded," &c., "containing one-eighth of an acre, with the store and shed thereon, being shown to us by the within named Moore, the creditor, as the estate in fee simple of the within named James W. Weeks, the debtor, and we have appraised said lands and tenements as the estate in fee simple of said Weeks at," &c.

The verdict was for the defendant, and the plaintiff alleged exceptions.

*E. B. Smith,* in support of the exceptions.

I. As to the time when the Moore title must be deemed to have accrued.

It accrued Dec. 21, 1858, when Moore "attached on the original writ," and its validity depends on facts then existing. Drake on Attachment, § 221; *Stanley* v. *Perley*, 5 Greenl., 369; *Nason* v. *Grant*, 21 Maine, 164; *Emerson* v. *Littlefield*, 12 Maine, 148; *Brown* v. *Williams*, 31 Maine, 406; *Osgood* v. *Holyoke*, 48 Maine, 410.

Moore exercised his power of choice and elected to have his title to accrue that day. He seeks that advantage and must take disadvantages also. (See officer's return of levy.)

There having been, then, no specification of claim annexed to the writ, he obtained no lien by his attachment, and his title fails. R. S., c. 81, § 31; *Fairbanks* v. *Stanley*, 18 Maine, 296; *Saco* v. *Hopkinton*, 29 Maine, 268; *Osgood* v. *Holyoke*, and *Nealy* v. *Judkins*, 48 Maine, 410 & 566.

II. If Moore had actual notice of plaintiff's title, he acquired and could transmit none. So, of subsequent purchasers prior to tenant.

III. Moore's levy void; error apparent on the record.

Title by levy is statute conveyance. Statute must be strictly complied with. *Gorham* v. *Blazo*, 2 Greenl., 232; *Pope* v. *Cutler*, 22 Maine, 105; *Lumbert* v. *Hill*, 41 Maine, 475; *Benson* v. *Smith*, 42 Maine, 414; *Metcalf* v. *Gillett*, 5 Comstock, 400; *Morton* v. *Edwin*, 19 Vt., 77; *Pierce* v. *Strickland*, 26 Maine, 277.

R. S., c. 76, § 3, was construed in *Roop* v. *Johnson*, 23 Maine, 335; c. 94, § 7 of R. S., 1841, said to be "obscure." To remedy obscurity, language was changed in R. S., 1857, c. 76, § 3.

Under R. S., 1841, c. 94, § 7, co-tenant, reversion and remainder-man could not tell whether or not their titles were denied. To remedy this mischief, the R. S., 1857, c. 76, § 3, provides, in relation to the return of appraisers, as follows: — (1,) That it shall be made by them "on the back of the execution," (this is not, but annexed, and might have been fraudulently removed, which is what the statute intended to prevent,) and (2,) state the nature of the estate, i. e. whether lands, tenements, &c., and whether gristmill, house,

Brackett *v.* Ridlon.

factory or shop, &c., (3,) and its "value." Then (4,) "and whether it is in severalty or in common," (5,) a fee simple or less estate, (6,) in possession or reversion, &c., (7,) its location.

The word "and" implies addition; it here adds an essential element to an appraiser's return. Webster's and Worcester's Dict's. Its emphatic repetition in R. S., c. 76, § 3, noticeable. Observe change of mood of verb; indicative instead of subjunctive.

IV. The appraisers' return bad and levy void, because —

1. They do not "state" whether the land was held by Weeks "in severalty or in common." (They do not even say it is Weeks', but only that Moore "shows it as his.") *Gault* v. *Hall*, 26 Maine, 569.

2. Meaning of "fee" and "fee simple," is simply inheritance. Co. Litt., § 1, a; 1 Washb. Real Prop., 51; 4 Kent's Com., *5. It designates the quantity and not the quality of the estate. 1 Washb. on Real Prop., 406. A fee simple may be owned in severalty or in common, by two or more. Coke Litt., §§ 280, 181, *et seq.*; 2 Black. Com., *192; 1 Wash. on Real Prop., 416. It may be in possession, reversion or remainder. 4 Kent's Com., *198; 1 Washb. on Real Prop., 416; 4 Dane's Abridgm't, c. 114, art. 20.

V. Reason for particularity required by § 3, c. 76, R. S.

Debtor entitled to know all the facts; proceedings *in invitum*. *Morton* v. *Edwin*, 19 Vt., 77, and cases cited *ante*.

Other joint owners and reversioners entitled to know if their estate be admitted or denied.

1. The statute must be so construed as to effect this, its intention, and to remedy the mischief. See cases cited *ante* and *passim*.

2. Being *in invitum* it must be strictly construed as against the creditor who resorts to this statute and takes title from it. See cases cited *ante*; *Davis* v. *Maynard*, 7 Mass., 246; *Lancaster* v. *Pope*, 1 Mass., 86. Its requirements are in the nature of a condition precedent and must have been strictly complied with to pass title. *Martin* v.

*Edwin*, 19 Vt., 77, cited *sup.*; *Wellington* v. *Gale*, 13 Mass., 489; *Perry* v. *Dover*, 12 Pick., 206; *Williams* v. *Amory*, 14 Mass., 29; *Pierce* v. *Strickland*, 26 Maine, 277.

3. As to defendant's innocent joint owners and reversioners, to be construed "liberally."

4. To be so construed as to give every word force and meaning. *Opinion*, 22 Pick., 573; *James* v. *Dubois*, 1 Har., 285; *U. S.* v. *Warner*, 4 McLean, 463; *Hutchins* v. *Niblo*, 4 Blackf., 148.

The occupant has a right to know whether or not his possession is to be disturbed, or only the reversion or remainder levied on. R. S., c. 76, § 3.

1. Appraisers should state whether they appraised an estate in "possession, reversion or remainder," in order to let us see if appraisal be fair.

2. We can presume nothing upon this point, because the statute is to be construed strictly in this respect. Cases *supra*.

*A fortiori* it cannot be presumed that it was in the debtor's possession in this case, because it would be presuming against the facts stated in exceptions. Moore, if he acted fairly, (as we are bound to presume he did,) could not have shown the estate to them as in possession of Weeks, for we had given him actual notice to the contrary.

It may be inferred from the amount of the appraisal, that they did not consider the estate in the possession of Weeks at the time of the levy. Defendant and presiding Judge inferred that they did. This shows it should be stated as required by law; no inference authorized.

VI. — 1. In construing a statute regard must be had to the language of the Legislature, whether it convey the idea the Court think it should or not. *Ellis* v. *Page*, 1 Pick., 44; *Rutland* v. *Mendum*, Ib., 156; *Buck* v. *Spofford*, 31 Maine, 36; *Pierce* v *Atwood*, 13 Mass., 344. Therefore it is only in doubtful cases and expressions, that the argument *ab inconvenienti* will have weight. *Langdon* v. *Potter*, 3 Mass., 221; *Gore* v. *Brazier*, 3 Mass., 53; *Putnam* v *Longley*,

11 Pick., 490; *Coffin* v. *Rich*, 45 Maine, 511; *Ingalls* v. *Cole*, 47 Maine, 540.

2. If the same language be used in later statutes as in former, the same construction applies. *Com.* v. *Hartnett*, 3 Gray, 450. And the converse is true; a change of terms implies a change of intention.

3. The subsequent Acts of 1863, c. 165, shows that § 3 of c. 76 must be construed as plaintiff contends.

4. Change from Acts of 1841, by the R. S. of 1857, not for condensation; because it occupies more room in revision of 1857.

VII. As to officer's return.

1. Officer's return cannot help omission in that of appraisers. The statute authorizes him "to adopt theirs;" not them his. It shows that theirs is to be completed before he makes his. He does not know what they appraised otherwise than from their return; his statement of what was shown them is extra official.

2. His return is silent as to import and fact of possession.

VIII. Seizin was taken by creditor within the year; it should have been. R. S., c. 76, § 15. *Darling* v. *Rollins*, 18 Maine, 405; *Downer* v. *Hazen*, 10 Vt., 418.

IX. Courts should consider effect of decision to make plaintiff pay his adversary's lawyer in a suit where plaintiff prevailed after long litigation. Broom's Legal Max., 174.

X. — 1. One co-tenant entitled to possession of whole estate, as against a stranger. The requested instruction should have been given. "Unity of possession" essential to tenancy in common. 4 Dane's Abridg., c. 134, art. 2, § 12; 4 Kent's Com., *367; Co. Lit., 188, b.

Their possession is a unit, each one as against everybody, by his co-tenants, possesses and is entitled to possess the whole estate. Possession of one tenant is possession of all. 4 Kent's Com., *370; 1 Washb. on Real Prop., 417; *Buckmaster* v. *Needham*, 22 Vt., 617.

"Either has an actual right to actual possession." The entry of one is the entry of both. *Colburn* v. *Mason*, 25

Brackett *v.* Ridlon.

Maine, 435; *Barnard* v. *Pope*, 14 Mass., 438; *Shumway* v. *Holbrook*, 1 Pick., 14; *Kirk* v. *Kirk*, 3 Dana, (Ky.,) 53.

See, directly in point, *Allen* v. *Gibson*, 4 Rand., (Va.,) 468; *Knox* v. *Silloway*, 10 Maine, 214; *Wass* v. *Bucknam*, 38 Maine, 360; *Gowen* v. *Shaw*, 40 Maine, 56; *Loomis* v. *Pingree*, 43 Maine, 311.

A voluntary surrender of possession by a disseizor, held to put all the tenants in possession. *Vaughan* v. *Bacon*, 15 Maine, 455. Judgment in favor of one for possession would have same effect.

2. Writ of entry is for possession. R. S., c. 104; *Wyman* v. *Brown*, 50 Maine, 144. And the struggle is to show which party has the better title to the possession in himself.

Sect. 10, c. 104, R. S., provides for one tenant suing alone for possession of common lands.

Sect. 11 provides for suit by one tenant against his co-tenant. In this case demandant has perfect title in fee of one-half of the premises and to possession of the whole. Tenant has no title. Possession is only *prima facie* evidence of title, (50 Maine, 144,) and tenant does not rely upon that, but puts in specific title, which fails.

We are entitled to judgment for possession of whole, and the instruction should have been given. *Loomis* v. *Pingree*, 43 Maine, 311.

*Moore, Drew* and *Hamilton*, for the defendant.

WALTON, J.—Real action. Verdict for defendant. Plaintiff excepts. Several questions are presented for consideration.

1. One link in the chain of the defendant's title is a levy. The plaintiff claimed that there was evidence on the face of the writ, to show that the only schedule of items contained in or annexed to it was annexed after the attachment; and the defendant offered evidence tending to prove the contrary. The presiding Judge instructed the jury that, as the demandant did not claim to have obtained his title between

the time of the attachment and levy, the testimony was immaterial; that if the fact was as the demandant alleged, and the attachment was void, the creditor's title would be deemed to have accrued on the day of the levy. The demandant contends that this ruling was wrong; that inasmuch as the officer's return upon the execution states that the land levied upon had been attached on the original writ, the attachment is thereby made the basis of the creditor's title, and if the attachment was not valid, his title fails; that it cannot stand upon the levy alone as it would if no attachment on the original writ had been attempted, or the levy had been made without reference to the attachment. We think this view of the law cannot be sustained. If the attachment and levy are both valid, then the creditor's title will relate back to the attachment and take date from that time. If the levy is valid and the attachment void, then the creditor's title will take date from the time of the levy; and the fact that the officer refers to the attachment in his return upon the execution, will not affect the validity of the levy. We see nothing erroneous in the rulings of the presiding Judge upon this point.

2. A deed from the debtor, through which the demandant claims title, was not recorded till long after the levy. The demandant introduced evidence tending to prove "actual notice" of this deed to the creditor before the attachment, and to some of his successors in title; but the presiding Judge instructed the jury that unless it was shown that the tenant had actual notice of the deed before acquiring his title, notice to the parties preceding him would not avail; that the tenant's title could not be affected by such notice to his predecessors in title, if the tenant was himself an innocent purchaser for value in good faith without actual notice of the deed. To this ruling the plaintiff excepts. He contends that if the attaching creditor had notice of the unrecorded deed, he acquired nothing by his levy, and could transmit no title to his grantee, — certainly not if the latter also had notice of the deed, — and that the latter could

give no title even to a *bona fide* purchaser without notice. This reasoning is more plausible than sound. It must be remembered that without giving effect to the unrecorded deed the tenant's title cannot be defeated, and that the law expressly declares that such a deed shall not be effectual against any person, except the grantor, his heirs and devisees, and persons having actual notice thereof. (R. S., c. 73, § 8.) If the tenant is neither the grantor, nor his heir, nor devisee, how can the deed be allowed to affect his title without violating the express provisions of the statute? Clearly it cannot. We think the ruling of the presiding Judge was correct.

3. The presiding Judge ruled that the levy was valid; that the then existing provisions of law were substantially complied with. To this ruling the plaintiff excepts. He contends that the appraisers' certificate is defective in not stating whether the estate appraised by them was an estate in severalty or in common, in possession, reversion or remainder, as required by the Revised Statutes, c. 76, § 3. The appraisers say they viewed a parcel of land shown to them as the estate in fee simple of the debtor, and that they appraised it as the estate in fee simple of the debtor. A "fee simple" is the largest estate known to the law, and when this term is used, and no words of qualification or limitation are added, does it not necessarily imply an estate owned in severalty, and an estate in possession? An estate not in possession, not owned in severalty, must be less than a fee simple. It is undoubtedly true that a person may own a remainder or reversion in fee. But such an estate is not a "fee simple;" it is a fee qualified or limited. So, when a person owns in common with another, he does not own the entire fee, a "fee simple;" it is a fee divided or shared by another. When, therefore, the term "fee simple" alone is used, it means an estate in possession and owned in severalty. In other words, it means the largest estate known to the law, one which embraces the entire value of the land, not an estate that must be waited for, or shared

Brackett *v.* Ridlon.

with another. We think the ruling of the presiding Judge on this point was correct. *Boynton* v. *Grant*, 52 Maine, 220; *Stinson* v. *Rouse*, 52 Maine, 260.

4. The demandant requested the presiding Judge to instruct the jury, that if they found the demandant had title to the premises as tenant in common with others, that he was entitled to possession of the whole as against a tenant holding only by possession; but the presiding Judge declined to give this instruction. The plaintiff concedes that, inasmuch as the jury found that he owned no estate in the premises, this instruction becomes unimportant, and need not be examined.

5. Another point urged against the validity of the levy is that the certificate of the appraisers and the return of the officer are not written upon the back of the execution as the law requires. (R. S. c. 76, §§ 3 and 5.) No such point appears to have been taken at the trial, and there is no evidence before us that satisfies us that they were not upon the back of the execution. The copies in the case are on separate sheets of paper fastened together, but we do not think it would be safe to infer from that fact that the originals are in the same condition. The appraisers' certificate speaks of the within named creditor, and of this execution, and the officer's return uses similar expressions. The language, therefore, indicates that they are written upon the back of the execution. In the absence of more satisfactory proof to the contrary, we shall act upon the presumption that the officer and the appraisers did their duty in this particular.                      *Exceptions overruled.*

*Judgment on the verdict.*

APPLETON, C. J., CUTTING, DICKERSON and DANFORTH, JJ., concurred.